IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHIRLEY STOREY,           )
                          )
        Plaintiff,        )
                          )   Case No. 04 C 7352
    v.                    )
                          )
CITY OF CHICAGO,          )
                          )
        Defendant.        )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Judge:

Pro se[1] Plaintiff Shirley Storey filed the present one-count First Amended Complaint against her employer Defendant City of Chicago alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*. Before the Court is the City's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants the City's motion.

**BACKGROUND**

**I.     Procedural Background**

During the relevant time-period, the City employed Storey, who is African-American, in the position of Clerk III for the Chicago Police Department ("CPD"). (R. 63-1, Def.'s Stmt. Facts ¶ 2; R. 72-1, Pl.'s Resp. to Def.'s Stmt. Facts ¶ 2.) On September 21, 2004, Storey filed her first discrimination charge with the Equal Employment Opportunity Commission ("EEOC") based on alleged race discrimination. (Def.'s Stmt. Facts ¶¶ 3, 4.) The EEOC issued a Dismissal

---

[1] Plaintiff Shirley Storey was represented by counsel until after Defendant filed its summary judgment motion on January 12, 2007, when both counsel and Plaintiff Storey moved for counsel to withdraw. The Court granted the motion.

and Notice of Rights letter dated September 27, 2004. (*Id.* ¶ 5.) On November 15, 2004, Storey filed the present action against the City alleging disability discrimination in violation of the ADA. (*Id.* ¶ 6.) The City filed a motion to dismiss Storey's complaint because she failed to exhaust her administrative remedies as to her ADA claim. (*Id.*) Thereafter, the Court granted Storey leave to file an amended complaint after which Storey filed a second EEOC charge alleging disability discrimination[2]. (*Id.*; R. 25-1.)

In her First Amended Complaint, Storey alleges that the City forced her to take medical leave from July 13, 2004 to September 15, 2004 and from September 20, 2004 to August 1, 2005, and that "her disability, her record of having such a disability, or that City of Chicago regarded her as being disabled, were motivating factors in City of Chicago's employment decisions." (*Id.* ¶ 7.) Storey further alleges that "[s]ince August 1, 2005, the Chicago Police Department has further harassed Ms. Storey based upon her record of disability or regarding her as disabled by its failure to return her to a comparable position and otherwise forcing her to undertake medical examinations." (*Id.*) Storey's First Amended Complaint does not contain allegations of race discrimination. (R. 29-1, First Amend. Compl ¶¶ 1, 6-8.)

## II.    Storey's Employment with the Chicago Police Department

In 1997, Storey started worked for the Chicago Police Department ("CPD") in the Juvenile Advocacy Section. (*Id.* ¶ 10.) She was one of three individuals assigned to the Juvenile Advocacy Section who performed clerical duties. (*Id.*) Storey's duties included typing and filing "Juvenile Control Cards," among other tasks. (*Id.* ¶ 11.) In December 2003, many of Storey's work responsibilities were eliminated because different employees were entering the

---

[2] This case was transferred by Executive Committee to this Court on August 3, 2006.

2

information on the Juvenile Control Cards into a database, and, consequently, the CPD stored this information electronically. (*Id.* ¶ 12.)

Maria Sierra, a civilian, was Storey's supervisor and reported to Sergeant Kevin Fahey, who oversaw the Juvenile Advocacy Center. (*Id.* ¶ 11.) In May or June 2004, a clerk in the Missing Persons Section retired, and thus Sierra began to assign the clerks in the Juvenile Advocacy Center the task of filing cards known as "Missing Persons Control Cards," which were smaller in size than the Juvenile Control Cards. (*Id.* ¶¶ 13, 14.) Storey did not think that filing the Missing Persons Control Cards was part of her job. (*Id.* ¶ 14.) Moreover, Storey believed that the person who had previously filed the Missing Persons Cards had a higher pay grade than Storey and was white. (*Id.* ¶ 15.) Although Storey admitted that most of her job duties had been eliminated, she testified at her deposition that "[i]t was not my job for them to go to other departments and get work and bring to me to do." (*Id.*)

### III. Storey's Allegations of Discrimination

Storey testified at her deposition that on July 2, 2004, she asked Sierra how much longer they would be filing the Missing Persons Cards and that the smaller cards hurt her fingers. (*Id.* ¶ 17; Pl.'s Resp. Def.'s Stmt. Facts ¶ 17.) Storey further testified that Sierra responded that Storey should find another job to which Storey told Sierra that she should find another job. (Def.'s Stmt. Facts ¶ 17; Pl.'s Stmt. Facts ¶ 17.) Before July 2, 2004, Storey never mentioned to Sierra that filing these smaller cards made her neck and fingers sore. (Def.'s Stmt. Facts ¶ 17.)

After her encounter with Sierra, Storey went to Sergeant Fahey's office and explained the incident. (*Id.* ¶ 18.) Sergeant Fahey responded by telling Storey that Sierra was her boss, to which Storey responded, "Maria was not my boss." (*Id.*) Storey further testified that she

3

believed Sergeant Fahey discriminated against her because "[h]e did not care what was going on" and "[h]e just wanted me to know that no matter what was going on, I have no opinion." (*Id*. ¶ 19.) In addition, Storey testified that she asked Sergeant Fahey if he had ever heard of racial discrimination. (*Id*. ¶ 18.)

On that same day, Storey wrote a letter entitled "To whom it may concern" in which she complained about Sierra, including that Sierra assigned filing tasks from the Missing Persons Unit to the clerks in the Juvenile Advocacy Section and that it was unnecessary. (*Id*. ¶ 20.) Storey also complained that Sergeant Fahey just walked around, socialized, and went downstairs to take cigarette breaks. (*Id*.) Also in her letter, Storey recounted her conversation with Sergeant Fahey about racial discrimination stating that she wanted him to know that she knew what they were trying to do by giving only the clerks all the filing. (*Id*. ¶ 21.) She also stated that giving the clerks the unwanted filing was a form of racial discrimination. (*Id*.)

## IV. Storey's Medical Leave

Storey contends that her fingers and neck began to hurt in June 2004. (*Id.* ¶ 22; Pl.'s Resp. Def.'s Stmt. ¶ 22.) Storey claimed that filing the smaller cards from the Missing Persons Section caused soreness in her neck and fingers. (Def.'s Stmt. Facts ¶ 23.) On July 11, 2004, Storey visited her doctor and the doctor sent a note to Sergeant Fahey which stated that Storey's "recent new responsibility of filing" aggravated her thyroid disorder, caused neck pain, and also caused Storey to develop tenosynvitis – inflammation of the sheath surrounding the tendon – in her right middle figure. (*Id*. ¶ 24.) The doctor also stated that "as her primary care doctor [I] can only advise that you accommodate her back into the job duties that she has always had which never caused her problems." (*Id*.) After Sergeant Fahey consulted with the CPD Personnel

4

Division, he met with Storey on July 12, 2004. (*Id.* ¶ 25; Pl.'s Resp. Def.'s Stmt. Facts ¶ 25.) At his meeting with Storey, Sergeant Fahey told Storey that she must either do her assigned tasks or take sick days or a medical leave of absence. (*Id.*)

Thereafter, Storey took her accrued sick and vacations days off from work. (Def.'s Stmt. Facts ¶ 26.) At her deposition, Storey testified that in September 2004, she contacted the City and stated that she was ready to return to work. (*Id.*; Ex. H, Storey Dep., at 70.) After she got a written release from her doctor, Storey returned to work on September 16, 2004. (*Id.*; Ex. H, Storey Dep. at 70, 72, 82.) Upon her return to work, Sierra gave Storey and the other clerks Missing Persons Control Cards to file. (*Id.* ¶ 28.) Storey refused to file the cards stating that she would not do any work in the department until her doctor released her. (*Id.*; Pl.'s Resp. Def.'s Stmt. Facts ¶ 28.)

On September 17, 2004, Storey met with Sergeant Fahey and Sergeant Mary Conley of CPD's Personnel Division. (Def.'s Stmt. Facts ¶ 29.) At that meeting, Sergeant Fahey informed Storey that she must perform her assigned work. (*Id.*) Sergeant Conley stated that at that time, Storey said she would not work in Juvenile Advocacy because every time she looked at Sergeant Fahey she got ill. (*Id.* ¶ 29; Ex. M, Conley Aff. ¶ 3.) Also, Sergeant Conley averred that Storey made threatening comments about her. (*Id.* ¶ 30, Ex. M, Conley Aff. ¶ 5.) Storey denies that she made any such comments about Sergeants Fahey or Conley. (Pl.s' Resp. Def.'s Stmt. Facts ¶¶ 29, 30.)

On September 20, 2004, Storey sat at her desk and did not work. (Def.'s Stmt. Facts ¶ 31.) Sergeants Fahey and Conley decided that Storey's presence at work was disruptive and that because she was not performing her tasks she should not stay at work. (*Id.*) After Storey left on

5

September 20, 2004, Sergeant Conley recommended that Storey have a "fitness for duty" evaluation before she was allowed to return to work. (*Id.* ¶ 32.) A "fitness for duty" evaluation determines whether an employee is physically and mentally able to perform the functions of her job. (*Id.*) Sergeant Conley decided to recommend this evaluation based on Storey's behavior at the September 17 and 20, 2004 meetings. (*Id.*) Commander Bradford Woods approved Sergeant Conley's request. (*Id.*)

On September 23, 2004, Storey filled out a request for medical leave, which was granted. (*Id.* ¶ 33.) Storey remained on medical leave until August 1, 2005. (*Id.*) In August 2005, as part of her fitness for duty examination, Storey saw a psychologist who determined that Storey was unfit for duty because of her issues related to anger, resentment, depression, and anxiety. (*Id.* ¶ 34.) Storey did not contact anyone at CPD about returning to work after August 2005. (*Id.*)

## V.     Storey's Alleged Disability

Storey contends that the disability from which she suffered during the relevant time period was painful and swollen fingers and neck. (*Id.* ¶ 35.) She also asserts that she has a thyroid problem and testified that sitting with her head down "must have aggravated it." (*Id.*) Storey's doctors have diagnosed her with hyperthyroidism and tenosynvitis. (*Id.* ¶ 36.) Storey's primary physician also noted that she was experiencing neck pain. (*Id.*) Storey first experienced these symptoms sometime in June 2004 and stopped experiencing her sore finger and neck sometime in July or August 2004. (*Id.* ¶ 37; Pl.'s Resp. Def.'s Stmt. Facts ¶ 37.)

Moreover, Storey testified that her conditions affected her because she could not use her hand to cook and she had trouble sleeping at night. (*Id.* ¶ 38.) In addition, Storey testified that her condition did not affect her ability to perform any job tasks except her ability to file the small

6

Missing Persons Control Cards. (*Id.* ¶ 39.)

Also, Storey testified that no one at the CPD referenced her neck or finger conditions in a derogatory manner or otherwise. (*Id.* ¶ 40.) She further testified that she thought Sergeant Fahey may have known that she could have had a disability, but she did not know what he believed. (*Id.* ¶ 41.) Specifically, Storey testified that "I don't believe he treated me a certain way because I had a disability. I think he treated me a certain way because I was African American." (*Id.*) At her deposition, Storey testified that she did not think that anyone at the CPD ever discriminated against her because they believed she had a disability. (*Id.* ¶ 42, Ex. H, Storey Dep. at 101.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

In her First Amended Complaint, Storey alleges that the City discriminated against her and harassed[3] her based on her disability, namely, her sore neck and fingers. "The ADA prohibits discrimination against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Burnett v. LFW Inc.,* 472 F.3d 471, 483 (7th Cir. 2006) (quoting 42 U.S.C. § 12112(a)). To establish a prima facie case of disability discrimination, Storey must present evidence that: (1) she is disabled within the meaning of the ADA; (2) she was meeting CPD's legitimate job expectations; (3) she suffered an adverse employment action; and (4) CPD treated similarly situated employees outside of her protected class more favorably than she. *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 937 (7th Cir. 2007).

## I.  Disabled under the ADA

Under the first element of a prima facie disability claim, namely, whether a person is disabled within the meaning of the ADA, the Court considers "the nature and severity of the impairment, the duration and expected duration of the impairment, and the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment." *Id.* (quoting 29 C.F.R. § 1630.2(j)(2)(i)-(iii)). Storey may establish that she is disabled under the ADA by presenting evidence that: (1) she has a physical or mental impairment that substantially

---

[3] To date, the Seventh Circuit has never explicitly recognized a harassment claim under the ADA. *See Mannie v. Potter,* 394 F.3d 977, 982 (7th Cir. 2005). Even if there were such a cause of action, Storey has failed to set forth any evidence that she experienced harassment that was "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Id.* (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

8

limits one or more major life activities; (2) there is a record of such an impairment; or (3) her employer regards her as having such an impairment. *Id.* (citing 42 U.S.C. § 12102(2)(A)-(C)).

Viewing the evidence and all reasonable inferences in a light most favorable to Storey, she has failed to set forth evidence creating a genuine issue of material fact that she is disabled within the meaning of the ADA under any of these three options. *See Anderson v. Liberty Lobby*, 477 U.S. at 255 (once properly supported motion for summary judgment is made, adverse party must set forth facts showing genuine issue of material fact for trial). First, Storey testified that no one at the CPD referenced her neck or finger conditions in a derogatory manner or otherwise. She also testified that she thought Sergeant Fahey may have known that she had a disability, but testified that "I don't believe he treated me a certain way because I had a disability. I think he treated me a certain way because I was African American." (Def.'s Stmt. Facts ¶ 41.) Storey further stated that she did not think that anyone at the CPD ever discriminated against her because they believed she had a disability. (*Id*. ¶ 42, Ex. H, Storey Dep. at 101.) Based on Storey's own admissions, she has failed to set forth evidence that her employer regarded her as having a physical or mental impairment that substantially limited one or more major life activities. *See Rooney v. Koch Air, LLC,* 410 F.3d 376, 382 (7th Cir. 2005); *see also* 42 U.S.C. § 12102(2)(C).

In addition, Storey does not point to any evidence in the record supporting the second option pursuant to Section 12102(2)(B) – that there is a record that she has a physical or mental impairment that substantially limits one or more major life activities. Although Storey includes two letters from her physicians, Section 12102(2)(B) requires more than a diagnosis. *See*

*Rooney,* 410 F.3d at 381; *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 510 n.7 (7th Cir. 1998). Instead, the statute requires "a record reflecting the kind of impairment that would impose a substantial limitation on one or more of the plaintiff's major life activities." *Davidson,* 133 F.3d at 510 n.7 (citing 29 C.F.R. § 1630.2(k); 29 C.F.R. Pt. 1630, App. § 1630.2(k)); *see also Kampmier,* 472 F.3d at 938.

Thus, the Court turns to whether Storey has presented evidence creating a genuine issue of material fact under the first option – whether she had a physical or mental impairment that substantially limits one or more major life activities. *See Kampmier,* 472 F.3d at 937; *see also* 42 U.S.C. § 12102(2)(A). The focal point of this inquiry involves the term "major life activities," which include activities that "are of central importance to daily life," such as "walking, seeing, and hearing." *See Cassimy v. Board of Educ. of Rockford Pub. Sch., Dist.,* 461 F.3d 932, 936 (7th Cir. 2006) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)). Moreover, to qualify as disabled under the ADA, a plaintiff must show that the limitation on the "major life activity" is "substantial." *Toyota Motor Mfg.,* 534 U.S. at 195 (citing 42 U.S.C. § 12102(2)(A)). "Substantially limits" means that the plaintiff "is unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Kampmier,* 472 F.3d at 937; *see also* 29 C.F.R. § 1630.2(j)(1)(i)-(ii). In other words, a plaintiff must show that – during the relevant time period – she was either prevented or severely restricted from major daily tasks, such as walking, eating, and sleeping. *Scheerer v. Potter,* 443 F.3d 916, 919 (7th Cir. 2006). As the Seventh Circuit recently articulated, "[n]ot every medical

affliction amounts to, or gives rise to, a substantial limitation on a major life activity." *Cassimy,* 461 F.3d at 936.

Storey argues that her physical impairments prohibited her from the major life activities of sleeping and cooking. The type of sleep problems that amount to the substantial limitation of the major life activity of sleeping are prolonged, severe, and long-term sleep difficulties. *Scheerer,* 443 F.3d at 920-21; *see also Rossbach v. City of Miami,* 371 F.3d 1354, 1359 (11th Cir. 2004) (plaintiffs who claimed they could not sleep normally were not substantially limited from sleeping); *Pack v. Kmart Corp.,* 166 F.3d 1300, 1306 (10th Cir. 1999) (intermittent problem with sleep did not substantially limit life activity of sleeping). Here, instead of presenting medical or other evidence to support her argument, Storey simply sets forth her own deposition testimony that she had trouble sleeping at night because of her neck pain – without any further description of her symptoms. Meanwhile, assuming cooking is a major life activity, the only evidence in the record concerning Storey's inability to cook is Storey's deposition testimony that one of her hands hurt when she cooked. *See Scheerer,* 443 F.3d at 919 (to survive summary judgment on disability discrimination claim, plaintiff must set forth specific facts – conclusory allegations will not suffice).

In sum, because Storey "has submitted very scant evidence as to how her impairments affect her major life activities," the Court "cannot conclude that there remains a material issue of fact as to whether she is substantially limited by her impairments." *Burks*, 464 F.3d at 757. Put differently, based on the limited amount of evidence Storey presents, the Court has no basis on which to determine whether her sore neck and fingers prevented or restricted her major life activities. *Id.* at 756-57.

11

Finally, although Storey does not raise the issue of the major life activity of working, the Court addresses this issue for the sake of completeness. Under the ADA, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Kupstas v. City of Greenwood,* 398 F.3d 609, 612 (7th Cir. 2005) (citing 29 C.F.R. § 1630.2(j)(3)(i)). Instead, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Here, Storey testified that her condition did not affect her ability to perform any job tasks except her ability to file the Missing Persons Control Cards. Storey's inability to file these smaller cards, however, does not establish that she was substantially limited in the major life activity of working because she must show more than her inability to perform her particular job or a certain task. *See Burnett,* 472 F.3d at 484; *Kupstas,* 398 F.3d at 612.

Viewing the facts and all reasonable inferences in a light most favorable to Storey, she has failed to present evidence giving rise to a genuine issue of material fact on the question of whether her finger and neck pain substantially limited any major life activity, including the major life activities of sleep, cooking, and working. *See Cassimy,* 461 F.3d at 936; *Burnett,* 472 F.3d at 484. Thus, Storey is not "disabled" within the meaning of the ADA.[4]

---

[4] In her brief opposing summary judgment, Storey argues that the CPD failed to make reasonable accommodations concerning her sore fingers and neck. *See Timmons v. General Motors Corp.,* 469 F.3d 1122, 1125 (7th Cir. 2006) ("In addition to prohibiting adverse employment actions against disabled persons because of their disabilities, the ADA requires employers to make reasonable accommodations for the disabilities of qualified individuals."). Because Storey failed to set forth evidence that she is disabled within the meaning of the ADA, her failure to accommodate claim also fails. *See Cassimy v. Board of Educ. of Rockford Pub. Sch., Dist.,* 461 F.3d 932, 935-36 (7th Cir. 2006).

## II.     Similarly Situated Employees

Even if Storey could establish that she is disabled within the meaning of the ADA, she has failed to set forth evidence creating a genuine issue of material fact that the CPD treated similarly situated employees outside of her protected class more favorably than she. *See Kampmier,* 472 F.3d at 937. To determine whether employees are similarly situated, the Court's inquiry is a flexible one that considers "all relevant factors, the number of which depends on the context of the case." *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007) (quoting *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000)). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue,* 219 F.3d at 617-18. In other words, for a fellow employee to be similarly situated to the Storey, she must set forth evidence that the employees are "directly comparable to her in all material respects." *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)).

Two other individuals worked with Storey and had the title of "Clerk III" in the Juvenile Advocacy Section, Delores Moody and Diana Cage. (Def.'s Stmt. Facts ¶ 10.) The record – for the most part – is devoid of any information about Moody and Cage, such as whether they suffered from a similar disability or if they engaged in similar conduct at work, namely, whether they refused to file the Missing Persons Control Cards. *See Ineichen v. Ameritech*, 410 F.3d 956, 960 (7th Cir. 2005). What little evidence Storey presents consists of her statement that Case had difficulty with her hands and that she did not know if Moody suffered from a similar medical

13

condition. (Def.'s Stmt. Facts, Ex. H, Storey Dep. at 101, 103.) Storey further testified that Moody received more favorable treatment at work and she took more breaks. (Def.'s Stmt. Facts ¶ 45; Ex. H, Storey Dep. At 103-04.)

Without more information, however, the Court cannot make a meaningful comparison between Storey and these co-workers. *See Radue,* 219 F.3d at 619 (similarly situated element requires plaintiff to demonstrate shared "common features essential to a meaningful comparison"). As the Seventh Circuit has explained, "the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." *Humphries,* 474 F.3d at 405.

Accordingly, Storey has failed in her burden of setting forth evidence creating a genuine issue of material fact concerning the similarly situated element of her prima facie case of disability discrimination. *See Kampmier,* 472 F.3d at 937. In fact, Storey fails to mention the words "similarly situated" in her response brief. *See id.* at 938. As such, Storey has not set forth a prima facie case of disability discrimination. Thus, the Court need not address the City's pretext arguments. *See Burks,* 464 F.3d at 754.

## **CONCLUSION**

For these reasons, the Court grants Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

Dated: March 12, 2007

                                                **ENTERED**

                                                _____
                                                **AMY J. ST. EVE**
                                                **United States District Court Judge**